IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| SPREITZER PROPERTIES, LLC, JOSEPH SPREITZER, AND JAMIE SPREITZER,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAVELERS CORP; TRAVELERS PROPERTY CASUALTY CO. OF AMERICA; TRAVELERS COMPANIES, INC.; TRAVELERS INSURANCE COMPANY; TRAVELERS INDEMNITY COMPANY; THE PHOENIX INSURANCE COMPANY; HOUSBY HEAVY EQUIPMENT, LLC, AND HOUSBY MACK, INC.,<br><br>Defendants. | No. 21-CV-106-CJW-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

This matter is before the Court on plaintiff Spreitzer Properties, LLC's and plaintiffs Joseph and Jamie Spreitzer's (collectively "plaintiffs") Motion to Remand to State Court. (Doc. 25). Defendants Travelers Corp, Travelers Property Casualty Co. of America, Travelers Companies, Inc., Travelers Insurance Company, and Travelers Indemnity Company (collectively "Travelers") timely filed a resistance (Doc. 31), in which defendants Housby Heavy Equipment, LLC and Housby Mack, Inc. (collectively "Housby") joined (Doc. 32). Plaintiffs timely filed a reply. (Doc. 33). For the following reasons, the Court **grants** plaintiffs' motion.

## I. RELEVANT BACKGROUND

At this stage, the Court accepts the following facts stated in plaintiffs' petition as true. (Doc. 1-4). Plaintiffs are residents of Iowa. (Doc. 1-4, at 1). Travelers are insurance companies and citizens of the State of Connecticut, authorized to do business in Iowa. (*Id.*, at 2). Housby are businesses existing under the state of Nebraska with their principal place of business in Iowa. (*Id.*).

In 2016, Housby purchased a company that leased plaintiffs' premises located on 16th Avenue in Cedar Rapids, Iowa. (*Id.*, at 1-3). Housby assumed that company's lease and allegedly agreed to obtain property insurance at a replacement cost basis for the buildings, naming plaintiffs as additional insureds under the policy. (*Id.*, at 3). Housby obtained insurance from Travelers for their own property, but not on the buildings and did not name plaintiffs as insureds under the policy. (*Id.*, at 4).

On August 10, 2020, a strong storm event, known as a "derecho," destroyed the leased premises. (*Id.*) Plaintiffs filed a claim with Travelers, but Travelers did not pay insurance benefits to plaintiffs. (*Id.*, at 12).

On October 8, 2021, plaintiffs filed a petition in the Iowa State Court for Linn County suing Travelers and Housby under various theories. (*Id.*, at 1). Travelers accepted service. (Doc. 1, at 2). On October 19, 2021, before Housby had been served, Travelers removed the case to this Court, under Title 28, United States Code, Section 1441. (Doc. 1). In its notice of removal, Travelers asserted removal was proper "as this Court would have had diversity jurisdiction over this action under 28 U.S.C. § 1332(a)." (*Id.*, at 1). Travelers further asserted that "[c]omplete diversity exists" because on the date of removal plaintiffs were citizens of Iowa while Travelers were citizens of Connecticut, thus "no party defendant that is a citizen of the state of Iowa has been properly served and joined to this case." (*Id.*, at 2-4). Plaintiffs served Housby on October 26, 2021, joining them to this case. (Docs. 9 & 10). Plaintiffs filed a motion

to remand on November 22, 2021. (Doc. 25).

## II. THE PARTIES' ARGUMENTS

In their motion to remand, plaintiffs argue that this Court lacks diversity of citizenship jurisdiction because plaintiffs and Housby defendants are both citizens of the State of Iowa. (Doc. 25). Plaintiffs argue that Travelers used a legal maneuver, sometimes called a "snap removal," to remove this case to federal court before Housby was served. (*Id.*, at 4). Plaintiffs argue that snap removal is inconsistent with the purpose of the forum defendant rule, Title 28, United States Code, Section 1446(b)(2). (*Id.*, at 5-7). Plaintiffs also argue that snap removal is inconsistent with the general scheme of rules governing diversity jurisdiction. (*Id.*, at 7-9).

Travelers resist, first arguing that the motion is untimely. (Doc. 31, at 3-4). Travelers also argue that their use of snap removal is fitting and proper and allowed under a plain reading of the forum defendant rule. (*Id.*, at 4-7). Housby added nothing to the discussion, merely joining in Travelers' resistance "[f]or the reasons stated" in that resistance. (Doc. 32).

In reply, plaintiffs argue that even if the case was properly removed to federal court, complete diversity was destroyed when Housby was joined as a party to this suit. (Doc. 33, at 1-3). Plaintiffs also argue that interpreting the forum defendant rule to permit snap removal would produce absurd results. (*Id.*, at 4-5).

## III. TIMELINESS OF THE MOTION

The Court will first address defendants' argument that plaintiffs' motion to remand is untimely. Defendants argue that plaintiffs' motion to remand is untimely because Title 28, United States Code, Section 1447(c) provides that a motion to remand must be filed "within 30 days after the filing of the notice of removal[.]" (Doc. 31, at 3 (quoting a portion of 28 U.S.C. § 1447(c)). Plaintiffs argue their motion is timely because it was filed within 30 days of service on the Housby defendants. (Doc. 25, at 3 n.3). Plaintiffs

3

further argue that even if they initially consented to removal, that is not the same as consenting to the case remaining in federal court after Housby was joined and destroyed complete diversity. (Doc. 33, at 3-4).

The defect in defendants' argument is that they are not reading Section 1447(c) in its entirety, and quote only a portion of the statute. Section 1447(c) provides, in pertinent part,

> A motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time* before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c) (emphasis added).

Here, plaintiffs seek remand not on the ground that there was a defect in the removal of the case to federal court. Rather, plaintiffs seek remand on the ground that this Court lacks subject matter jurisdiction because there is not complete diversity of citizenship among the parties. As Section 1447(c) makes plain, that matter can be brought to the court at any time before final judgment is entered. *See Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003).

Thus, the Court finds plaintiffs' motion timely. Even were it to find otherwise, the Court would find on its own motion the obligation to ensure that it has subject matter jurisdiction over this matter. The Court has an independent duty to ensure it possesses the requisite subject matter jurisdiction to adjudicate the parties' claims. FED. R. CIV. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999).

### IV. ANALYSIS

The Court begins its analysis where it should—with the United States Constitution. Federal courts are, by design, courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the United States Constitution and Congress.

U.S. CONST., art. III, § 2, cl.1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (stating that federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree") (cleaned up). Federal courts should therefore "presume[ ] that a cause lies outside this limited jurisdiction[.]" *Kokkonen*, 511 U.S. at 377 (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799).

The United States Constitution provides for federal courts to hear, among others, "Controversies . . . between Citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens, or Subjects." U.S. CONST., Art. III, §2. This constitutional provision "does not automatically confer diversity jurisdiction upon the federal courts[, but r]ather, it authorizes Congress to do so, and, in doing so, to determine the scope of the federal courts' jurisdiction within constitutional limits." *Herz Corp. v. Friend*, 559 U.S. 77, 84 (2010). Congress determined that scope and codified diversity of citizenship jurisdiction in Title 18, United States Code, Section 1332. Under this statute, "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff" and the amount in controversy exceeds $75,000. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original); 18 U.S.C. § 1332. The purpose of diversity jurisdiction "is to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants."[1] *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-54

---

[1] At the time of the drafting of the United States Constitution, we were less a country than a collection of separate nation states where loyalty to one's state was often far greater than to the United States. Thus, it is understandable in the historic context of that time that citizens questioned whether they would receive justice if sued in another state and believed that federal courts, where judicial officers owed fealty first to the federal government, would provide a fairer forum for the litigation of disputes between citizens of different states. It has long been debated whether there remains a need for diversity of citizenship jurisdiction to address this antiquated and unwarranted distrust of state courts. *See generally, e.g.*, Thomas D. Rowe, Jr., *Abolishing*

(2005). "The presence of parties from the same State on both sides of a case dispels this concern[.]" *Id.*, at 554.

"While [Section] 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, [Section] 1441 gives defendants a corresponding opportunity." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Section 1441 provides, in pertinent part:

> **(a) Generally.**—Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district courts of the United States have original jurisdiction*, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
> **(b) Removal based on diversity of citizenship.**—
> (1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
> (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest *properly joined and served as defendants* is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(a) & (b) (emphasis added). Section 1441 is a procedural rule and not a jurisdictional provision. *See Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1055 (8th Cir. 2020); *Nolan v. Prime Tanning Co.*, 871 F.2d 76, 78 (8th Cir. 1989) (citing *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702–05 (1972).

Section 1441(b)(2) is referred to as "the forum defendant rule," and it constitutes

---

*Diversity Jurisdiction: Positive Side Effects and Potential for Further Reforms*, 92 HARV. L. REV. 963 (1979); Felix Frankfurter, *Distribution of Judicial Power Between United States and State Courts*, 13 CORNELL L.Q. 499 (1928). In 1990, a Federal Courts Study Committee recommended that Congress abolish diversity of citizenship jurisdiction. FED. COURTS STUDY COMM., 101st Cong., 2d Sess., *Report of the Federal Courts Study Committee* 38 (Comm. Print 1990). Congress did not. In 1996, Congress did, however, vote to increase the amount in controversy amount from $50,000 to $75,000. *See* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat 3850 (enacted October 19, 1996). Thus, diversity of citizenship jurisdiction remains and there is no sign that it will be going away any time soon.

a limitation on a defendant's ability to remove a case to federal court. The forum defendant rule limits removals by defendants sued in their own state because the purpose for diversity of citizenship jurisdiction—that a party may not receive a fair shake in another state court—does not exist. *See* 16 MOORE'S FEDERAL PRACTICE—CIVIL § 107.55[1], at 107–108 ("The justification for the forum defendant rule is simple. The purpose of diversity jurisdiction is to provide litigants with an unbiased forum by protecting out-of-state litigants from local prejudices. Therefore, it makes no sense to allow an in-state defendant to take advantage of removal on the basis of diversity jurisdiction."); *Allapattah Servs.*, 545 U.S. at 553–54. Thus, the forum defendant rule "exists to preserve the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice." 983 F.3d at 1055 (quotation omitted).

Courts strictly construe and enforce limitations on removal. *Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995). It follows that the burden to establish diversity jurisdiction generally, and proper removal specifically, falls upon the party asserting jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936) (stating that party asserting diversity of citizenship jurisdiction bears the burden); *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993) ("As the party seeking removal and opposing remand, [defendant] had the burden of establishing federal subject matter jurisdiction.").

"[A]n emerging litigation tactic" called "snap removal" involves defendants removing cases to federal court before plaintiffs serve defendants whose joinder in the suit would defeat diversity jurisdiction. *Breitweiser v. Chesapeake Energy Corp.*, Civil Action No. 3:15-CV-2043-B, 2015 WL 6322625, at *3 (N.D. Texas Oct. 20, 2015). This tactic keys off the words in Section 1441(b)(2) providing that a case "may not be removed if any of the parties in interest *properly joined and served* as defendants is a

citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Advocates of snap removal reason that so long as a defendant whose presence in the case would defeat diversity of citizenship has not been served at the time of removal, then removal is appropriate even if removal would be improper had that defendant been served. (*See* Doc. 31, at 5).

In the years since *Breitweiser*, snap removal has ceased being an emerging tactic and is now much more commonplace—and controversial. *See generally*, Valerie M. Nannery, *Closing the Snap Removal* Loophole, 86 U. CIN. L. REV. 541 (2018) (criticizing use of snap removal and describing empirical study on 2012–2014 snap removal cases); E. Farish Percy, *It's Time for Congress to Snap to it and Amend 28 U.S.C. §1441(1)(B)(2) to Prohibit Snap Removals that Circumvent the Forum Defendant Rule*, 73 RUTGERS U. L. REV. 579 (2021) (criticizing the use of snap removal and comparing Nannery's empirical study with her own empirical study on 2018–2020 cases in the Third Circuit, showing a significant increase in the use of the maneuver and predicting its increased use); Adam B. Sopko, Swift *Removal*, 13 FED. CTS. L. REV. 1 (2021) (criticizing use of snap removal and comparing Nannery's empirical study with his own empirical study on 2018–2019 cases, also showing a significant increase).

When Congress recodified the Judicial Code in 1948, it added the words "properly joined and served" to the provision governing removal from state courts, which it codified at Section 1441. *Compare* Judiciary Act, Pub. L. No. 61-475, 36 Stat. 1087, 1094–95 (1911), *with* Act of June 25, 1948, Pub. L. No. 80-773, 62 Stat. 869, 937–38 (codifying Title 28, Judiciary and Judicial Procedure). The legislative history behind this added language is murky. *See Hawkins v. Cottrell, Inc.*, 785 F. Supp.2d 1361, 1375 (N.D. Ga. 2011) (opining that "the reason behind the addition of the joined and served language is not clear from the legislative history"). Nevertheless, courts have interpreted the language as intended to prevent gamesmanship by plaintiffs who would name in-state

defendants to defeat diversity jurisdiction without any intent to pursue or serve that in-state defendant. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp.3d 1004, 1014 (D. Nev. 2021) (explaining legislative history of the forum defendant rule); *Allen v. GlaxoSmithKline PLC*, Civil Action No. 07-5045, 2008 WL 2247067, at *4 (E.D. Pa. May 30, 2008); *Stan Winson Creatures, Inc. v. Toys R Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003). *See also Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (interpreting addition of "properly joined and served" intended to prevent gamesmanship by plaintiffs, but also prevents gamesmanship by defendants); *Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286, 1291–92 (N.D. Ala. 2019) (same); *Little v. Wyndham Worldwide Operations*, 251 F. Supp. 3d 1215, 1222 (M.D. Tenn. 2017) (same); *Woolfenden v. Target Corp.*, Case No. SA CV 21-01616-DOC-DFM, 2021 WL 6618635, at *2 (C.D. Cal. Nov. 16, 2021) (interpreting forum defendant rule as intended to prevent gamesmanship). *But see Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019) (mentioning gamesmanship as one possible purpose of the rule, but finding the text's plain meaning requires a different result).

Snap removals occur under various circumstances. For instance, a defendant sued in the state where it is a citizen, but by a plaintiff citizen of a different state, might remove the pending state court case to federal court before the plaintiff serves the defendant. In that instance, complete diversity of citizenship exists, but the forum defendant rule would have prevented removal had the forum defendant been served before removal. In other instances, as here, an in-state plaintiff might file a state court petition against multiple defendants, including at least one out-of-state defendant and at least one in-state. At the time of removal, the out-of-state defendant has been served, but the in-state defendant has not. Any in-state defendant is not served until after removal. In that case, complete diversity of citizenship among the litigants does not exist based on the pleadings, or later

service; it existed, if at all, only temporarily.

Three circuit courts of appeal have found snap removals proper, based on a literal reading of the statutory language of Section 1441(b)(2). *See generally Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020); *Gibbons*, 919 F.3d 699; *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147 (3rd Cir. 2018).[2] A fourth circuit court of appeal has, in dicta, suggested it would find snap removals proper. *See McCall v. Scott*, 239 F.3d 808, 809 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship, as [plaintiff] concedes there was, the inclusion of an unserved resident defendant in the action does not defeat removal under [Section] 1441(b).") (emphasis omitted). "Finally, a fifth circuit court of appeal has, in dicta, suggested it would find snap removals improper. *See Goodwin*, 757 F.3d at 19, 1221–22 (affirming district court grant of plaintiff's motion to dismiss removed case without prejudice where district court's denial of plaintiff's motion to remand was not appealed). The Eighth Circuit Court of Appeals has not addressed snap removals.

District courts are split as to whether snap removals are appropriate.[3] Within the Eighth Circuit, it appears that only Missouri district courts have addressed the issue and their decisions are split. *Compare Terry v. J.D. Streett & Co.*, No.4:09CV01471 FRB, 2010 WL 3829201, at *2 (E.D. Mo. Sept. 23, 2010) (approving of snap removal based

---

[2] The Court notes that in each of these cases, there was complete diversity of citizenship among the parties. In each case, the plaintiff sued the defendant in the defendant's home state and the defendant removed the case to federal court before it was served. Here, in contrast, there is not complete diversity of citizenship among the parties to this suit.

[3] There is ongoing debate on whether there is a trend in favor or against snap removals. *Compare Doe v. Daversa Partners*, No. 20-cv-3759 (BAH), 2021 WL 736734, at *4 (D. Nev. Feb. 25, 2021) ("The weight of authority is that snap removals are permitted under the forum-defendant rule[.]"), *with Ethington v. Gen. Elec. Cop.*, 575 F. Supp.2d 855, 863 (N.D. Ohio 2008) ("[T]he growing trend among district courts wrestling with this latest litigation fad [ ] to grant a timely motion to remand."). The Court will not join in the debate or count cases because it is academic when none of these decisions are binding on this Court.

on statute's plain language), *and Johnson v. Precision Airmotive, LLC*, No. 4:07CV1695, 2007 WL 4289656 CDP, at *5 (E.D. Mo. Dec. 4, 2007) (same), *with Perez v. Forest Labs., Inc.*, 902 F. Supp.2d 1238, 1246 (E.D. Mo. 2012) (disapproving of snap removal based on legislative intent), *and Perfect Output of Kansas City, LLC v. Ricoh Ams. Corp.*, No. 12-0189-CV-W-SOW, 2012 WL 2921852, at *2 (W.D. Mo. July 17, 2012) (same). Those district courts who have found snap removals proper apply a strict reading of the statute's plain language. *See Little*, 251 F. Supp.3d at 1220 (collecting and summarizing cases). District courts who have found snap removals improper tend to look at the purpose of the forum defendant rule, congressional intent, and whether allowing snap removals would produce an absurd result. *Id.*; *see also Delaughder v. Colonial Pipeline Co.*, 360 F Supp. 3d 1372, 1379 (N.D. Ga. 2018) ("[T]he majority of courts that remanded snap removals did so on a legislative intent rational, agreeing that the literal application of the statutory language favors snap removals."). Those courts finding snap removal improper point out that the technique "smacks [ ] of forum shopping by a defendant," *Perez*, 902 F. Supp.2d at 1243, or "gamesmanship" by defendants, *Delaughder*, 360 F. Supp.3d at 1380. This is a matter of first impression for the United States District Court for the Northern District of Iowa.

The plain language of Section 1441(b)(2) would seem to permit snap removals. "The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Owner-Operator Independent Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (quoting in part *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, (1992)). But "[s]tatutory construction . . . is a holistic endeavor" that requires courts to "select a meaning that produces a substantive effect that is compatible with the rest of the law." *Czyzewski v. Jevic Holding Corp.*, 127 S. Ct. 973, 985 (2017) (cleaned up). "It is a fundamental canon of statutory construction that the words of a statute must be read in

their context and with a view to their place in the overall statutory scheme." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted). "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, . . . and fit, if possible, all parts into an [sic] harmonious whole." *Id.* (cleaned up). Last, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). As the Supreme Court explained, "when 'the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (cleaned up). Thus, even though a court may find statutory language plain, it need not enforce the plain meaning if doing so would produce an absurd result.

Here, the Court finds it must read all the statutes addressing diversity of citizenship jurisdiction together to arrive at a proper interpretation of Section 1441(b)(2) to avoid an absurd result. The Court begins with Title 28, United States Code, Section 1332 which confers subject matter jurisdiction in federal court only when there is complete diversity of citizenship. Here, there is not, and no party asserts otherwise. The parties whose citizenship matters for the court's diversity evaluation are those named in the complaint. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). Whether a defendant has been served is not relevant to whether the complete-diversity requirement is satisfied. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) (when the plaintiff is a resident of the forum state, "the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant," because in such circumstances "there is no diversity of citizenship"); *United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995) ("[D]iversity jurisdiction must be

12
Case 1:21-cv-00106-CJW-MAR   Document 49   Filed 04/18/22   Page 12 of 14

determined from the face of the pleading and not from returns of service of process or lack thereof[.]" (cleaned up)); *Howell v. Tribune Ent. Co.*, 106 F.3d 215, 217–18 (7th Cir. 1997) (rejecting argument that the citizenship of a defendant could be ignored because the defendant had never been served). There is not complete diversity of citizenship among the parties to this litigation, and never has been. Thus, Section 1332 dictates that this Court lacks subject matter jurisdiction over this case.

Second, the Court reads Section 1441 as a whole, with a view toward Section 1332's requirement there be complete diversity, keeping in mind that the Court is to read the removal statute strictly, and recalling that defendants bear the burden of showing removal was proper. In doing so, it is clear that Section 1441 provides a narrow ground for defendants to remove cases to federal court. Further, as noted previously, Section 1441(b)(2) is a procedural rule, not a jurisdictional rule. A procedural rule cannot confer jurisdiction where jurisdiction does not exist. Last, Section 1441(b)(2) is a further limitation on that narrow removal provision to bar forum defendants from removing cases to federal court. Its language about proper service, added later, cannot be fairly read to expand federal jurisdiction if defendants win the race between plaintiffs serving defendants with law suits and filing for removal in federal court. To read it otherwise would produce an absurd result when, through gamesmanship, a case lacking complete diversity that would never be permitted in federal court is slipped in through a provision intended as a limitation on federal subject matter jurisdiction. Thus, the Court finds this case was improperly removed to federal court.

Alternatively, under Title 28, United States Code, Section 1447(c), cases originally filed in state court must be remanded "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Therefore, even if the Court found that the case was properly removed for a period of time through the maneuver of snap removal, once plaintiffs served Housby it defeated complete diversity

of citizenship among the parties.[4] The Court is duty bound to ensure that it exercises jurisdiction over cases only to the extent permitted under the United States Constitution and the acts of Congress. When there is a lack of complete diversity of citizenship among the parties, the Court cannot exercise jurisdiction over the case and it must be remanded to state court where plaintiffs chose to sue defendants and where it belongs.

## V. CONCLUSION

For these reasons, the Court **grants** plaintiffs' motion to remand. (Doc. 25).

**IT IS SO ORDERED** this 18th day of April, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[4] To be clear, there is no claim or basis for a claim that plaintiffs fraudulently joined Housby; plaintiffs named Housby in their state court petition.